**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE REED OGDEN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**<br><br>Case Nos.  2:07-cr-900 & 2:11-cr-543<br><br>Hon. Clark Waddoups |

This matter is before the court on Defendant Wayne Reed Ogden's motion for early termination of supervised release, which was filed on February 23, 2026 (the "Motion"). [*See* ECF No. 406.][1]  The court directed both the United States Attorney's office and the United States Probation and Pretrial Services office (the "Probation Office") to respond to the Motion.  [*See* ECF No. 407.]  On March 5, 2026, the United States filed its opposition to Mr. Ogden's Motion.  [*See* ECF No. 408.] And on March 17, 2026, the Probation Office submitted a Supervision Summary to

---

[1]      Mr. Ogden's Motion was filed in both Case No. 2:07-cr-900 and in Case No. 2:11-cr-543.  [*See* ECF No. 406 & Case No. 2:11-cr-543, ECF No. 242.]  It is not clear why Mr. Ogden filed the very same motion for early termination in Case No. 2:11-cr-543: his 36-month term of supervision in that case had expired on January 13, 2025.  Thus, his motion in Case No. 2:11-cr-543 [*see* ECF No. 242] is moot.  It is only Mr. Ogden's 60-month term of supervised release in the 2007 Case that remains pending (it is not set to expire until January 13, 2027).  The court's ECF No. references in this Memorandum Decision and Order will be to documents filed in Case No. 2:07-cr-900 unless otherwise specifically referenced.

the court.  In their respective submissions, both the United States Attorney's office and the Probation Office came to the same view on Mr. Ogden's Motion:  that early termination should be denied because Mr. Odgen had not been consistent with making his required restitution payments.  The court, having reviewed the Motion, the United States' opposition, the Supervision Summary from the Probation Office and the additional submissions from the Probation Office, including restitution payment schedules and other materials received from Mr. Ogden, and the relevant law, DENIES the Motion for the reasons set forth below.

BACKGROUND

In August 2013, following his conviction for wire fraud and mail fraud in Case No. 2:07-cr-900 (the "2007 Case") and his guilty plea to wire fraud and securities fraud in Case No. 2:11-cr-543 (the "2011 Case"), Mr. Ogden was sentenced to separate 120-month terms of imprisonment that were to run concurrently.  [*See* ECF No. 361; 2011 Case ECF No. 204.]  These convictions and sentences arose out of Mr. Ogden's role in real estate investment schemes in which he promised investors oversized short-term returns (of up to 100% in some cases) and provided investors with fake real estate documents.  He was also sentenced to 60 months of supervised release in the 2007 Case and 36 months in the 2011 Case.  [*See id*.]

Restitution was ordered in both cases:  $4,860,000.00 in the 2007 Case and $5,454,323.04 in the 2011 Case.[2]

Mr. Ogden began his term of supervision on January 14, 2022.  The Probation Office reports that he has done "relatively well" while on supervised release, including that he has reported as requested and maintained continuous employment.  And while Mr. Odgen has made some restitution payments while on supervision,[3] the Probation Office reports that his payment history "is marginal at best."  The Probation Office explained that it believed this was due, in part, to Mr. Ogden's failing health and medical bills.

In his Motion, Mr. Ogden only seeks an order terminating his remaining supervised release in the 2007 Case.  And consistent with the Probation Office's report, he asserts that he has "complied and been compliant with his conditions of supervision, although his restitution has fluctuated at times, due to expenses, many medical."  [ECF No. 406 at 2.]

Among other things, he also asserts that he has maintained employment as a dog trainer, earning $2,500 to $5,000 monthly, was married in 2025, intends to retire in May 2026 and "limit" his work due in part to health issues, and seeks early

---

[2]     [*See* ECF No. 361; 2011 Case ECF No. 204.]  There were 25 identified investor victims in the 2007 Case and 51 identified investor victims in the 2011 Case, each of which was entitled to restitution. [*See* ECF No. 363 (sealed); 2011 Case ECF No. 203 (sealed).]

[3]     The criminal judgment in both the 2007 Case and the 2011 Case required a minimum restitution payment of $100 each month during the period when Mr. Ogden was on supervision.  [*See* ECF No. 361 at 7; 2011 Case ECF No. 204 at 6.]  According to the United States Attorney, and as confirmed in the supplemental materials provided by the Probation Office, Mr. Ogden signed an agreement on July 29, 2022, to make minimum restitution payments of between $400 and $500 per month beginning in August 2022 in the 2007 Case.  [*See* ECF No. 408 at 2 n.3.]

termination of supervision so that he can seek reinstatement in his church. [*See* ECF No. 406 at 2–3.] The Probation Office has also forwarded materials to the court indicating that Mr. Ogden's health issues include a cancer diagnosis in April 2023, and related treatment since that time. According to Mr. Ogden, his medical treatments did not begin until January 2026 at which time he reduced his workload. On March 14, 2026, he indicated that his chemotherapy infusion treatments were to continue for another six months to be followed by 18 months of chemotherapy pills. He claims he is still working, albeit on a reduced schedule, and that he expects to begin receiving Social Security retirement benefits in May 2026.

Although Mr. Ogden's restitution payment schedule reveals that initially he was generally compliant with and met his monthly restitution obligations through October 2023, his compliance dramatically changed in November 2023. Beginning in November 2023 and through March 2026, Mr. Ogden failed to make monthly restitution payments or only made payments of less than the agreed-to minimum in 28 of the 29 intervening months.[4]

In its opposition, the United States argues that Mr. Ogden's sporadic restitution payment history "reflects a lack of care" in paying back the many victims of his schemes and that "justice and fairness demand from [Mr. Ogden] complete

---

[4]    [*See* ECF No. 408-1.] Specifically, Mr. Ogden missed monthly payments 16 times and failed to make the minimum payment 12 times. [*See id*.] And based upon Mr. Ogden's revised minimum monthly restitution payments, the Probation Office has calculated that since August 2022 he is delinquent on his monthly minimum in the amount of $12,600.00. In addition, according to the payment schedule provided by the United States, Mr. Ogden has only satisfied a total of $8,034.78 of the over $5.45 million he was ordered pay in the 2011 Case and only $14,051.20 of the $4.86 million he was ordered to pay in the 2007 Case. [*See id*.]

and consistent restitution payments to victims over a period of time." [ECF No. 408 at 3.] It argues that a failure to pay adequate monthly restitution should counsel in favor of denying early termination. [ECF No. 408 at 2–3 (citing *United States v. Greene*, No. 15-cr-395, 2022 WL 256497, at * 2 (E.D.N.Y. Jan. 27, 2022)).]

ANALYSIS

Early termination of supervised release is governed by 18 U.S.C. § 3583(e)(1). Under that provision, a court, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may choose to "terminate a term of supervised release ... at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).[5] As concerning Mr. Ogden, the most relevant of these § 3553(a) factors are "the nature and circumstances" of his offense and his "history and characteristics," and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (a)(7).

---

[5]    The § 3553(a) factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed ... (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ... (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... (5) any pertinent policy statement [issued by the Sentencing Commission] ... (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Turning to the nature and circumstances of his offense, from early 2002 to approximately January 2003, Mr. Ogden engaged in a fraudulent real estate-related scheme in which he defrauded approximately 25 victims of $4,860,000.00 million. [*See* Presentence Investigation Report ("PSR"), ECF No. 364 (sealed) at ¶¶19–23; Restitution List, ECF No. 363 (sealed) at 2–3.] Most of the funds were used by Mr. Ogden to make Ponzi payments to prior investors. But a portion of the fraud proceeds were also used to pay Mr. Ogden's personal expenses. [*See* PSR, ECF No. 364 (sealed) at ¶¶19–23.] Based on Mr. Ogden's minimal restitution payments made to date (i.e., $14,051.20) and his stated future plans, it is highly unlikely that any of these victims will ever be made whole. Indeed, he has only paid back less than 0.3% of the total restitution he was ordered to pay.

Notably, this was not the first or the last fraudulent scheme Mr. Ogden engaged in. When he was committing this fraud, he was serving parole for his 1998 Utah state law convictions for communications fraud, pattern of unlawful activity, theft by deception, and money laundering, that also involved a real estate pyramid scheme. Mr. Ogden's dozens of victims of that fraud suffered an estimated loss of over $6.6 million. [*See id*. at ¶41.] Mr. Ogden has never made any restitution payments in that case and, as of the time of his sentencing in the 2007 Case, the Probation Office indicated that he then owed over $13.1 million in unpaid restitution, including interest and penalties. [*See id*. at ¶68.][6]

---

[6]   [*See* PSR, ECF No. 364 (sealed) at ¶68.] No information has been presented to the court to indicate that in the intervening years Mr. Ogden has made any payment to satisfy those obligations.

And as previously noted, in the 2011 Case Mr. Ogden pleaded guilty to operating another real estate-related Ponzi scheme.  From September 2005 to September 2006—and despite the fact that he was under federal investigation for his role in the 2002–2003 scheme—Mr. Ogden and his brother engaged in a new swindle that defrauded an additional 51 victims of $5,454,323.04.   [*See id*. at ¶44; 2011 Case ECF No. 177 at ¶11; 2011 Case ECF No. 204.]  While much of the money collected from the victims was used to pay off other investors, Mr. Ogden and his brother used the company they had set up to engage in the fraud to pay themselves approximately $2,000,000.00  [*See* PSR, ECF No. 364 (sealed) at ¶44.]  And Mr. Ogden has only paid restitution of $8,034.78 in the 2011 Case, representing just a fraction of the total restitution that was ordered.

Examining the circumstances and nature of Mr. Ogden's offense, and his "history and characteristics" the court finds that these factors weigh in favor of continuing Mr. Ogden's supervision until January 2027.  Notably, Mr. Ogden committed the current offense in the 2007 Case while he was on parole following his state convictions for a similar scheme.  Not only that but he began yet another Ponzi scheme while his conduct underlying the 2007 Case was under investigation. This history of recidivism weighs in favor of continued supervision.

The court recognizes that Mr. Ogden appears to have performed well under supervision and has been in substantial compliance with the conditions of his supervision.  Up until recently, he has maintained continuous employment, has been cooperative with and responsive to the Probation Office, and has not

committed any new crimes.  Although the court commends Mr. Ogden's compliance with the conditions of his supervised release, compliance is the expected behavior when serving a term of supervised release.

Indeed, as some courts have noted, "the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community."  *See United States v. Seibles*, No. 10-235-3, 2019 WL 109332, at *4 (W.D. Pa. Jan. 4, 2019).  It is also the minimum performance to even be considered for early termination of supervision.  *See* 18 U.S.C. § 3583(e)(1); *see also* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 5D1.4 p.s., comment. n.1(B) (Nov. 1, 2025); GUIDE TO JUDICIARY POLICY, Vol. 8, Part E, Ch. 3, Section 360.20(c).[7]  Thus, the court finds that this factor does not weigh in favor of early termination.

Yet other circumstances concerning Mr. Ogden do weigh in favor of early termination.  Among these is the fact that he has been on low-risk supervision since February 2022—a factor that supports early termination.  *See* GUIDE TO JUDICIARY POLICY, Vol. 8, Part E, Ch. 3, Section 360.20(f).  In addition, Mr. Ogden's current medical struggles suggest that continued supervision may not be needed.

---

[7]     Application Note 1(B) of U.S.S.G. § 5D1.4 now specifies the factors a court may wish to consider in determining whether to terminate supervised release early—factors that are modeled in part after the factors found in Section 360.20.  *See* 2025 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, New § 5D1.4 (Modification, Early Termination, and Extension of Supervised Release (Policy Statement)), at 54.

His current medical plan indicates that he will still be receiving chemotherapy treatments for the remainder of his current term of supervision.

What stands most firmly in Mr. Odgen's path to early termination, however, is his imperfect restitution payment history.  As previously noted, the United States and the Probation Office both assert that early termination of Mr. Ogden's supervision in not warranted because his monthly restitution payments have been marginal and sporadic.  The court agrees.

One of the express factors the court must consider in assessing early termination is "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  This factor does not weigh in Mr. Ogden's favor.  *See, e.g., United States v. Walters*, 129 F. App'x 319, 320 (7th Cir. 2005) (affirming denial of early termination motion where defendant's failure to pay restitution in another fraud case in which supervision had expired made "it prudent for the district court to continue his supervised release"); *United States v. Thomas*, No. 1:07-cr-72, 2012 WL 3870523, at *1–2 (N.D. Ind. Sept. 6, 2012) (denying motion for early termination where defendant adhered to all his conditions of release but had a "sporadic history  of restitution payment" because "ongoing supervision is also warranted to ensure that [defendant] continues paying restitution to the victims of his offense") (citing § 3553(a)(7)).

Further, although the Guide to Judiciary Policy notes that "[t]he existence of an outstanding financial penalty does not adversely affect early termination eligibility," it modifies that position by stating that this is so "as long as the person

under supervision is in compliance with the payment plan for the prior 12 months."
*See* GUIDE TO JUDICIARY POLICY, Vol. 8, Part E, Ch. 3, Section 360.20(e).  As noted above, Mr. Ogden has not been in compliance since November 2023.

In its opposition, the United States does not foreclose all hope for early termination for Mr. Ogden.  Rather, it asserts that Mr. Ogden's request is premature because he should engage with its Financial Litigation Unit to assess his ability to pay and enter into an appropriate restitution payment plan.  [*See* ECF No. 244 at 4.]  The Probation Office is in agreement and notes that Mr. Ogden has submitted his financial assessment to the Financial Litigation Unit for its review and that a revised monthly restitution payment plan may be forthcoming.

But the fact remains that Mr. Ogden has not been compliant with his restitution obligations in this case (or his other cases).  Until he addresses that issue—either by becoming fully compliant with his restitution payments or by entering into a new restitution payment schedule as permitted under the law—his noncompliance weighs against early termination of his supervision.  Continuing his supervision, with the existing condition that he maintain stable employment, will only help ensure that he meets his current restitution obligations.  *See, e.g., United States v. Biear*, No. 21-2425, 2022 WL 1635644, at *1-2 (3d Cir. 2022) (unpublished) (affirming district court's denial of early termination where the district court concluded, among other things, that "most importantly, [defendant] still had an outstanding obligation of over $3 million in restitution and that supervision would

ensure that [defendant] continued to pay that obligation") (citing 18 U.S.C. § 3553(a)(7)).

Moreover, the court also notes that Mr. Ogden has made no showing that continued supervision, which will only last for eight more months, hinders his ability to work or his ability to take care of his medical issues, or is imposing any sort of undue hardship on him.[8]

The court is, however, concerned that Mr. Ogden may be equating early termination of his supervision with modification of (or, perhaps, complete relief from) his restitution obligations.  It would be erroneous for him to do so.  Mr. Odgen will still be required to pay restitution as ordered by this court even after his supervised release is terminated.  That obligation will continue at least until January 2042.  *See* 18 U.S.C. § 3613(b) ("The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. In the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount, and the lien provided in subsection (c) of this section shall continue until the estate receives a written release of that liability.").

---

[8]     Although Mr. Ogden claims that his continued supervision may prevent him from having some membership rights restored to him by his church [*see* ECF No. 406 at 3], the court does not view this as an "undue" hardship.  Any collateral impact on Mr. Ogden as a result of his convictions and his sentences is simply an attendant consequence of his criminal activity.  And whether early termination of supervision will or will not restore any ecumenical rights to Mr. Ogden is a determination that this court cannot prophesy.

The only mechanism for modifying Mr. Ogden's court-ordered restitution is set forth in 18 U.S.C. § 3664(o), which permits an adjustment to the restitution order to the extent it is permitted under subsection (k). *See U.S. v. Wyss*, 744 F.3d 1214, 1217–18 (10th Cir. 2014). Pursuant to subsection (k), if the court is notified that there has been a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay," the court may "adjust the [restitution] payment schedule, or require immediate payment in full." 18 U.S.C. § 3664(k). Under this provision, the court may "relax the manner of payment based on the defendant's financial resources." *Wyss*, 744 F.3d at 1219 (cleaned up).

A request for such a change, however, must be well-documented and substantiated. The burden of proof to establish changed circumstances lies with the defendant who is seeking some adjustment. *See* 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant … shall be on the defendant."); *see United States v. Read-Forbes*, No. 12-20099-01, 2020 WL 3639806, at *1–2 (D. Kan. July 6, 2020) (concluding that court lacked jurisdiction to grant relief under §3664(k) where defendant, who had the burden to show that her financial circumstances changed, did not show a material change in her financial circumstances) (citing *United States v. Rainey*, 794 F. App'x 728, 732 (10th Cir. 2019)).

Importantly, subsection (k) does not authorize a reduction in the total amount of restitution ordered. *See Wyss*, 744 F.3d at 1219 (reversing district court's decision to reduce amount of restitution owed noting that "[n]either subsection (k)

nor any other provision of § 3664, however, authorizes a reduction in the amount of restitution order over three years prior"). Further, before modifying Mr. Ogden's restitution payment schedule, the "Attorney General [of the United State] must certify to the court that the victim … owed restitution has been notified of the change in circumstances." 18 U.S.C. § 3664(k).

Mr. Ogden has not made such a showing. Indeed, he has not even requested any modification of his restitution. Nor have his victims been notified of any change in Mr. Ogden's circumstances, which is a required prerequisite for modifying his restitution. *See* 18 U.S.C. § 3664(k).

CONCLUSION

After fully considering all the materials submitted to the court, and after considering the relevant factors in 18 U.S.C. § 3553(a) as required by 18 U.S.C. § 3583(e)(1), the court concludes that early termination of Mr. Ogden's supervision is not, at this time, warranted by his conduct and in the interest of justice. Accordingly, his Motion [ECF No. 406] is DENIED.

IT IS ALSO ORDERED that his motion for early termination of supervision filed in Case No. 2:11-cr-0543 [*see* ECF No. 242] is DENIED as moot.

DATED this 15th day of May 2026.

BY THE COURT:

Clark Waddoups
United States District Judge